IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA

v.  Criminal Action No. 3:08mj727

JOSEPH A. PINA,

Defendant.

**MEMORANDUM OPINION**

This matter came before the Court for trial on August 24, 2009. Defendant is charged with driving under the influence of alcohol, speeding 38 miles per hour in a 25 miles per hour zone, and failing to maintain a single lane of traffic.

**I. Findings of Fact**

On November 6, 2008, at approximately 1:55 a.m., Officers Lewis and Valentine of the Fort Lee Provost Marshal's Office were patrolling C Avenue on Fort Lee, Virginia, which is within the special territorial jurisdiction of the United States. The officers observed a red Toyota Camry pass the parking lot of the Regimental Club at a high rate of speed. Officer Lewis testified that he confirmed by stationary radar that the Toyota Camry was traveling at a speed of 40 miles per hour in a 25 miles per hour zone.[1] Officer Lewis pursued the Toyota in his vehicle. The Toyota stopped past the stop sign at C Avenue and Mahone Avenue, then turned left on Mahone Avenue. The vehicle slowed to 5 miles per hour and traveled approximately one-quarter of a mile before stopping in the parking lot of a Burger King on Mahone Avenue.

---

[1] Though Officer Lewis testified that the Toyota Camry was traveling at a speed of 40 miles per hour in a 25 miles per hour zone, the Defendant is charged with speeding at a rate of 38 miles per hour in a 25 miles per hour zone. (Docket No. 5). The Court does not consider this discrepancy to constitute a material variance.

During the pursuit, Officer Lewis observed the Toyota leave the lane of travel and cross into the oncoming lane on multiple occasions. Both officers testified that no painted line divides C Avenue, which is a two-lane road. In addition, Officer Lewis testified that during pursuit, the driver turned on his right-turn signal, but that no apparent place to turn right existed where the driver activated his turn signal.

Officer Lewis conducted a traffic stop and identified the driver of the Toyota as Sergeant Joseph A. Pina. The officer noticed that Sgt. Pina's speech was slurred and that he fumbled while retrieving his driver's license and registration. Officer Valentine smelled alcohol emitting from the vehicle upon his approach. Officer Valentine asked Sgt. Pina if he had been drinking, and Sgt. Pina replied that he had consumed two drinks equivalent to 24 ounces of beer. Officer Lewis asked Sgt. Pina to step out of the vehicle, at which time the officer observed that Sgt. Pina leaned on the driver-side door of the car for balance.

Officer Lewis administered to Sgt. Pina two of three standardized field sobriety tests ("SFSTs"). Officer Lewis first performed a "walk-and-turn" test to judge Sgt. Pina's ability to understand and follow the officer's instructions. Officer Lewis did not clearly articulate all clues that might indicate intoxication, but he testified that the driver must keep his arms at his sides and count his steps aloud during completion of the test. Additional indicators of intoxication identified by Officer Lewis include not touching heel to toe, using the arms for balance, stepping off line, and making an incorrect number of steps.

Officer Lewis testified that Sgt. Pina took continuous steps, counted out loud, and did not use his arms for balance. However, Officer Lewis stated that Sgt. Pina did not touch heel to toe on many of the steps, stepped off the line "numerous times," seemed unsure of his balance, and

2

took several more than the prescribed nine steps. Officer Lewis estimated that the distance between Sgt. Pina's steps may have been between two to four inches apart when Sgt. Pina failed to touch heel to toe. Officer Valentine testified that he observed Sgt. Pina fail to touch heel to toe twice, step off the line twice, and take ten steps. After Sgt. Pina took more than nine steps, Officer Lewis terminated the test because Sgt. Pina appeared confused.

Officer Lewis then administered a horizontal gaze nystagmus ("HGN") test, which showed six out of six signs of intoxication. Officer Lewis moved a pen from left to right and asked Sgt. Pina to follow the pen with his eyes. Officer Lewis testified that involuntary bouncing of the eyes, called nystagmus, indicates intoxication. Officer Lewis found that Sgt. Pina exhibited nystagmus in both eyes.

Officer Lewis did not administer the one-legged stand test because Sgt. Pina indicated that he had knee problems.

After administering these two SFSTs, Officer Lewis placed Sgt. Pina in the back of the patrol car for transportation to the military police station. While reaching across Sgt. Pina to fasten his seat belt, Officer Lewis smelled alcohol coming from Sgt. Pina's person. En route to the military police station, Sgt. Pina "repeatedly" asked Officers Lewis and Valentine to give him only a warning because he was worried about the effect this would have on his career.

Lieutenant Bradley Trimble, Lieutenant Watch Commander of the Department of Army Civilian Police Department, presented testimony regarding the SFSTs used by military police officers and performed by Officer Lewis during his stop of Sgt. Pina. SFSTs used by officers

consist of the HGN test, the walk-and-turn test, and the one-legged stand test.[2] Lt. Trimble testified that the HGN test has six clues. During the HGN test, the officer asks the driver to follow a stimulus with his eyes only, refraining from moving his head. The stimulus is held twelve to fifteen inches from the suspect's face and moved on a flat plane across the body. Nystagmus, or involuntary bouncing of the eyes in a "jerky" fashion, indicates intoxication. Lt. Trimble testified that the walk-and-turn test has eight clues: two during the instructional phase, and six during the testing phase. Lt. Trimble identified the instructional phase clues as balance and starting the test too soon. Lt. Trimble failed to sufficiently articulate all six clues of the testing phase. He identified failure to touch heel to toe, steps with a larger than three-inch gap between them, and stepping off the line as three of the six clues.

## II. Analysis

The evidence presented at trial provides a sufficient basis to find the Defendant GUILTY beyond a reasonable doubt as to Count One, operating a motor vehicle under the influence of alcohol. The evidence presented at trial cannot establish the Defendant's guilt beyond a reasonable doubt as to Count Two, exceeding the posted speed limit by traveling 38 miles per hour in a 25 miles per hour zone, and Count Three, failure to maintain a single lane of traffic while operating a motor vehicle. Therefore, this Court finds the Defendant NOT GUILTY of Counts Two and Three.

---

[2] Lt. Trimble testified that individually, the HGN test is 77% reliable, the walk-and-turn test 68% reliable, and the one-legged stand test 66% reliable. Together, the HGN test and walk-and-turn test are 80% reliable if the arresting officer finds: (1) two or more cues on the HGN test; (2) four or more cues on the walk-and-turn test; and, (3) the suspect has no impairment that might affect his performance. Lt. Trimble testified that if the suspect is overweight, over the age of 50, or has a neurological or physical impairment, these factors may affect his or her ability to perform the SFSTs. Both Officers Lewis and Valentine have had training in SFSTs.

4

A. <u>Count One: Operating a Motor Vehicle Under the Influence of Alcohol</u>

This Court has jurisdiction pursuant to Title 18 of the United States Code, Section 13(a), assimilating Virginia Code Section 18.2-266.[3] The United States bears the burden of proving beyond a reasonable doubt that the Defendant was: (1) operating a motor vehicle (2) under the influence of alcohol. *See* Va. Code § 18.2-266(ii). When the United States offers no chemical analysis of the accused's blood or breath, a court must determine whether the accused is under the influence of alcohol "from all the evidence of his condition at the time of the alleged offense." *Brooks v. City of Newport News*, 295 S.E.2d 801, 804 (Va. 1982); *see also Moore v. Commonwealth*, No. 0264-99-4, 2000 WL 1014585, at *4 (Va. Ct. App. July 25, 2000); *Leake v. Commonwealth*, 497 S.E.2d 522, 526-27 (Va. Ct. App. 1998). "A defendant's admission that he consumed several alcoholic beverages, together with testimony of the arresting officer regarding the defendant's appearance and lack of coordination, is sufficient to support a conviction for driving under the influence of alcohol." *Lemond v. Commonwealth*, 454 S.E.2d 31, 35-36 (Va. Ct. App. 1995) (*citing Wheeling v. City of Roanoke*, 341 S.E.2d 389, 390 (Va. Ct. App. 1986)).

No dispute in this case exists as to whether Sgt. Pina operated the vehicle on November 6, 2008. The Court finds that the United States has met its burden as to the second, disputed, element, that Sgt. Pina operated his motor vehicle under the influence of alcohol.

Most conclusive of the Defendant's culpability is Sgt. Pina's erratic driving, his statement that he drank two beers, and his conduct observed by the arresting officers after being stopped. These indicia of intoxication establish the Defendant's guilt beyond a reasonable doubt of driving

---

[3] The Assimilative Crimes Act provides that conduct occurring on land under special maritime and territorial jurisdiction of the United States which is not expressly prohibited by federal law is governed by the penal laws of the state where the land is located. 18 U.S.C. 13(a).

under the influence of alcohol. *See Farren v. Commonwealth*, 516 S.E.2d 253, 255-57 (Va. Ct. App. 1999) (finding sufficient evidence to support a conviction for driving under the influence of alcohol because the arresting officer observed erratic driving and smelled alcohol emitting from the defendant, and because the defendant admitted drinking alcohol, slurred his speech, and leaned on his car door for balance).

The Court heard nine indicia of Sgt. Pina's intoxication. First, the testimony established that Sgt. Pina drove his car in an erratic fashion. Both Officers Lewis and Valentine testified that they observed Sgt. Pina speeding on C Avenue. As the officers pursued him, Sgt. Pina's vehicle drifted into the oncoming lane of traffic on a two-lane road. Sgt. Pina stopped his vehicle past the stop sign at C Avenue and Mahone Avenue. Officer Lewis also testified that he observed Sgt. Pina turn on his right turn signal on C Avenue at a point where no apparent place to turn right existed.

Second, Sgt. Pina admitted to Officer Valentine that he had consumed two beers equivalent to 24 ounces. Third, Officers Lewis and Valentine both smelled alcohol emitting from Sgt. Pina's person or car. Several other indicia included: fourth, that Officer Lewis noted that Sgt. Pina's speech was slurred; fifth, that Sgt. Pina fumbled with his documents; and, sixth, that Sgt. Pina needed to lean on his car door for balance. Seventh, Sgt. Pina "repeatedly" requested to be brought home and given a warning because he feared the effect of the event on his career, evincing consciousness of guilt.

The Court heard an eighth indication of intoxication when Officer Lewis testified that Sgt. Pina failed the HGN test administered by Officer Lewis. Lt. Trimble testified that during the HGN test, the eye should follow the stimulus smoothly. A person who had consumed alcohol

would exhibit nystagmus, and such person may exhibit anywhere between zero and six indicators of intoxication. Officer Lewis testified that Sgt. Pina exhibited six of six possible indicators of intoxication.

The United States's evidence concerning Sgt. Pina's failure of the walk-and-turn test provides a ninth, less compelling, but nonetheless probative, sign of Sgt. Pina's intoxication. No witness was able to clearly articulate the six clues used in the testing phase of the walk-and-turn test. Officers Lewis and Valentine appeared unsure how many indicators constitute the walk-and-turn test, and Lt. Trimble, though asked to identify each of the indicators, failed do so.[4]

Though there are discrepancies in the officers' testimony - Officer Lewis stated that Sgt. Pina failed to touch heel to toe on most steps, stepped off the line numerous times, and took several more than the nine required steps, while Officer Valentine stated that Sgt. Pina failed to touch heel to toe only twice, stepped off the line twice, and took only one additional step - the result appears to be the same: Sgt. Pina failed to adequately perform the walk-and-turn test. No evidence suggests that Sgt. Pina's failure was tied to any physical limitation. Given the presentation of this testimony, however, the Court gives Sgt. Pina's apparent failure little weight.

---

[4] Lt. Trimble identified the two instructional phase clues as balance and starting the test too soon, and stated that there are six testing phase clues. However, Lt. Trimble identified only three of the six testing phase clues: failure to touch heel to toe, more than three inches between steps, and stepping off the line. In fact, the walk-and-turn test consists of eight total clues: two during the instructional phase of testing, and six during the testing phase. Development of a Standardized Field Sobriety Test, National Highway Traffic Safety Administration, App'x A, *available at* http://www.nhtsa.dot.gov/people/ injury/alcohol/sfst/appendix_a.htm. Those indicators are: "the suspect cannot keep balance while listening to the instructions, begins before the instructions are finished, stops while walking to regain balance, does not touch heel-to-toe, steps off the line, uses arms to balance, makes an improper turn, or takes an incorrect number of steps." *Id.* Additionally, the suspect must count each pace out loud. *Pennsylvania v. Muniz*, 496 U.S. 582, 585 n.1 (1990).

Sgt. Pina's failure on one SFST and questionable performance on a second SFST further corroborate the other indicia observed by Officers Lewis and Valentine. The totality of evidence as to the manner in which Sgt. Pina operated his car, his admitted consumption of two beers, the odor of alcohol emitting from his person, and his repeated requests to be given a warning combine to establish guilt beyond a reasonable doubt. *See Lemond*, 454 S.E.2d at 36 (finding that where the defendant made an illegal U-turn, smelled of alcohol, performed poorly on the SFSTs, and admitted drinking alcohol, the "totality of the evidence" was sufficient to find the defendant guilty beyond a reasonable doubt). This Court is satisfied that the evidence of Sgt. Pina's condition, as described above, leaves no room for reasonable doubt that Sgt. Pina was under the influence of alcohol at the time he operated his car.

Therefore, for the foregoing reasons, this Court finds the Defendant GUILTY on Count One of the Criminal Information.

**B.     Count Two: Exceeding the Posted Limit by Traveling 38 Miles per Hour in a 25 Miles per Hour Zone**

The results of a radar determination of a vehicle's speed are prima facie evidence of the speed of such vehicle. Va. Code § 46.2-882. However, the statute "does not eliminate the necessity for the Commonwealth to prove that the machine used for measuring speed had been properly set up and recently tested for accuracy." *Royals v. Commonwealth*, 96 S.E.2d 812, 816 (Va. 1957). Accuracy may be determined by a certificate showing the calibration of the speedometer of any vehicle, any tuning fork employed to calibrate the radar, or any other method employed in calibrating or testing any laser speed determination device. Va. Code § 46.2-882.

During trial, the United States sought to prove the speeding violation absent proof via certificates that the tuning forks used to test the radar equipment had been properly tested and certified. Instead, the officer stated only that he had tested the radar with tuning forks. Existing case law states that where a radar unit's accuracy is established by use of tuning forks, the government must submit proper evidence of the accuracy of the tuning forks. *Myatt v. Commonwealth*, 397 S.E.2d 275, 278 (Va. Ct. App. 1990). Without proper evidence of the accuracy of the tuning forks, the evidence of the accuracy of the radar device used cannot suffice. *Id.* Testimony of the arresting officer as to the accuracy of the radar device responding to the tuning forks is, by itself, insufficient to establish the accuracy of the tuning forks. *Id.*; *see Biesser v. Town of Holland*, 156 S.E.2d 792, 794 (Va. 1967) (discussing the lack of "evidence of the type or character or method of use of the tuning fork, and no evidence of the accuracy of the tuning fork" except inadmissible hearsay). Where the United States has not provided evidence of the accuracy of the tuning forks used to calibrate the radar device, radar evidence may be disallowed. *United States v. Wornom*, 754 F. Supp. 517, 520 (W.D. Va. 1991).

In the instant case, Officer Lewis presented testimony regarding his use of the radar equipment. He testified that before and after each shift, the officers "test the calibration with tuning forks," and that the "tuning forks are tested regularly." The United States offered no other evidence concerning the type, character, or method of use of the tuning fork. Thus, the United States offered no evidence of the accuracy of the tuning fork. Because the United States failed to offer evidence of the accuracy of the tuning forks, the accuracy of the radar device used to calculate Sgt. Pina's speed is insufficient. Therefore, this Court finds the Defendant NOT GUILTY on Count 2 of the Criminal Information.

### C. Count Three: Failure to Maintain Single Lane of Traffic

Virginia Code Section 46.2-804(2) provides that "[w]henever any roadway has been divided into clearly marked lanes for traffic . . . [a] vehicle shall be driven as nearly as is practicable entirely within a single lane." Va. Code § 46.2-804(2). The Court finds this statute inapplicable to the case at bar. The United States presented testimony from Officers Lewis and Valentine that C Avenue "doesn't have a painted, divided line." In fact, there are no markings on C Avenue. Therefore, Virginia Code Section 46.2-804 is inapplicable to Sgt. Pina's operation of his vehicle on C Avenue. The Court thus finds the Defendant NOT GUILTY on Count Three of the Criminal Information.

### III. Conclusion

For the foregoing reasons, the Court finds the Defendant GUILTY on Count One, operating a motor vehicle under the influence of alcohol. The Court finds the Defendant NOT GUILTY on Counts Two and Three, exceeding the posted speed limit and failing to maintain a single lane of traffic, respectively.

/s/
M. Hannah Lauck
United States Magistrate Judge

Richmond, Virginia
Date: 9-15-09